ADAM CRUCE, Administrator of Peter Cruce, deceased, Appellant, *v.* LUCINDA CRUCE *et al.*, minor children, who appear by their Guardians, Appellees.

### APPEAL FROM UNION.

Money in the hands of an intestate guardian, deceased, belonging to his wards, in the hands of his administrator, ranks within the third class of debts to be paid, as provided for in the 115th section of the Statute of Wills; and will be preferred to the statutory allowance to the widow of the deceased guardian, and is to be paid in preference to such allowances, although the estate of the deceased is inadequate to her allowance, and the amounts due to the children.

Where A., who in his lifetime was guardian to B. and C., died intestate, having at the time of his death in his hands money belonging to his wards B. and C. upon claims duly allowed, and D., the administrator of A., deceased, applied the personal estate of A. to the payment of claims of the first and second classes, and paid over the residue of his estate to the widow of A., but which residue was inadequate to pay her the separate property allowed her by the appraisers, and D. obtained an order to sell and did sell the real estate of A., the proceeds of which were also inadequate to pay the unsatisfied claims of the widow and the amounts due to B. and C., it was held, That the claims of B. and C. were of the third class provided for in the 115th section of the Statute of Wills, and that the proceeds of the real estate of A. sold by D., as administrator, should be paid to B. and C., the wards of A., instead of to his widow; in preference to her claim arising out of a deficit of the personal estate of A. to furnish her provisions for one year, and for a deficit to provide for the value of the specific articles allowed by law — no such articles having been left by the intestate.

If there be no other debt against the estate than the claim of the widow arising out of such deficit, she would then be a creditor of the estate to the extent of such deficit, and would have the same right of other creditors to be paid out of the assets derived from such sale, and the overplus would go to the distributees as in other cases.

THE facts of this case are set out in the opinion of Mr. Justice Breese.

The Circuit Court of Union county, at April term, 1856, reversed the judgment of the County Court, which was in favor of the claims of the widow, and adjudged that Adam Cruce, administrator of Peter Cruce, deceased, should pay the money which came into his hands from the sale of the real estate of said deceased, after paying the first and second class claims, to the present guardians of the children instead of to the widow of Peter Cruce.

C. G. SIMONS, for Appellant.

J. DOUGHERTY, for Appellees.

BREESE, J. The record shows the following facts agreed upon by the parties. First, That the intestate, Peter Cruce, in his lifetime, was the guardian of Lucinda and Philip Cruce. That he died intestate, in 1852, and that defendant is his administrator. That at the time of his death he had in his hands money of his said wards, to the amount of three hundred and forty-six dollars and eighty-three cents—one hundred and eighty-two dollars and fifty-five cents, part thereof, being money of Lucinda, and the balance, being one hundred and sixty-four dollars and twenty-eight cents, the money of Philip. That the administrator had notice of this fact, and that said sums were duly proved and allowed as claims against said estate, on the 18th day of February, 1853, in the County Court of Union county.

That Sophia Cruce is the widow of the intestate, and that the amount of separate property allowed her by the appraisers, in lieu of specific articles of property and for one year's provisions—she having elected to take the same, in part in money, on the 15th day of March, 1852—amounted to six hundred and seventy-five dollars and twenty-five cents.

That the whole amount of the personal estate of the intestate was two hundred and forty-seven dollars and sixty cents, and that the claims of the first and second class amount to thirty dollars.

That the administrator applied the personal estate to the payment of these first and second class claims of thirty dollars, and paid over the balance to the widow, leaving a deficit of personal property to pay her separate property allowed her by the appraisers.

That the administrator, afterwards, at the April term of the County Court of Union county, obtained an order to sell the real estate of the intestate, and in pursuance of said order, did, on the 21st May, 1853, sell the same for three hundred and

eighty-eight dollars, and has received the same as assets in his hands, as such administrator.

That the claims of Lucinda and Philip are in no part paid, but remain due and unpaid, and are the only claims against the estate of the third class.

The question is, to whom the proceeds of the real estate should be paid, by the administrator—if to the widow of the intestate, the judgment of the Circuit Court is to be reversed—if to the wards, " in preference to the widow's claim for deficit of personal estate to furnish her provisions for one year and for the value of the specific articles of property allowed her by law, when no such articles were left by the intestate," then the decision of the Circuit Court is to be affirmed, and the administrator ordered to pay to them the proceeds of the sale of the real estate in his hands, according to the respective amounts of each of the minors.

This is a very important and interesting question, and we have bestowed upon it much attention. A brief review of our legislation on this subject, is necessary in order to a proper understanding of it.

By the first section of the act of Feb. 11, 1847, (Scates' Comp. 1203) it is provided, " That widows, living in this State, of persons whose estates are administered upon in this State, shall be allowed in all cases in exclusion of creditors, as their sole and exclusive property forever, necessary beds, bedsteads and bedding for themselves and families; necessary household and kitchen furniture; one spinning wheel; one loom and its appendages; one pair of cards; one stove and the necessary pipe therefor; the wearing apparel of themselves and families; one milch cow and calf for every four persons in the family; one horse of the value of forty dollars; one woman's saddle and bridle of the value of fifteen dollars; provisions for themselves and families for one year; two sheep for each member of the family, and the fleeces taken from the same; food for the stock above described, for six months; fuel for themselves and families for three months, and sixty dollars' worth of other property.

By the second section, the widow is entitled, in addition to the above, " to the one-third of the personal estate, after the payment of debts, as her property forever."

By the third section, the appraisers are required to make out and certify to the Court of Probate, " an estimate of the value of each article of specific property herein allowed to the widow."

By the fourth section, if the widow desires to take other property in lieu of that above specified, she must take the same

at the value affixed by the appraisers.   The fifth section repeals the forty-eighth section of the act of 1845, and the first section of the act amendatory thereto, found in the appendix to the Revised Statutes, page 598.   (Scates' Comp. 1202.)

The second section of this act, (ib. 1202,) provides, when the intestate leaves no property of the description above, the widow shall then be entitled to retain other property of equal value, or the value of the same in money, and it is made the duty of the administrator or judge of probate, to allow the value of these articles to be set apart to her, either in money or other personal property, at her election.

By section 110, (Scates' Comp. 1211,) it is provided: When any real estate shall, at any time, be ordered to be sold, the moneys arising from such sale shall be received by the executor or administrator applying for such order, and shall be considered as assets in his or her hands for the payment of debts; and shall be applied in the same manner as assets arising from the sale of personal property.

These are all the statutes, except one or two others hereafter noticed, which we conceive have any direct bearing on the question presented, and it will be seen they breathe a commendable spirit of liberality toward the widow, however much they may be supposed to detract from the rights of heirs and creditors.

The personal property she has a right to select and retain, is to the exclusion of creditors, and taken by the widow at the valuation fixed by appraisers, whose sympathies cannot be presumed to be against her, not unfrequently sweeps an entire estate.

This is undoubtedly the law, and however questionable its justice or policy may be, we must give it effect.

When, however, it is sought to put a construction upon these statutes, still further to advance the interests of the widow to the sacrifice of all others, we should require the strongest reasons therefor, and that it should be demonstrated they will bear no other construction than the one contended for, however that may operate; plausible or persuasive reasons merely will not do.

A desire, on the part of the legislature, to favor widows, is plainly discovered pervading all our statutes on the subject of intestate estates.   So strong has it been manifested, that where there is no issue, the widow is entitled on the death of her husband, after the payment of debts, to the whole of his personal estate, and to one-half of his real estate, forever, and her dower in the remaining portion of the real estate, equal to one-third of the yearly rents and profits thereof, the next of kin of the intestate being wholly excluded except as to one-half of the real estate, and that subject to the dower right of the widow as

above stated. The personal, and one-half of the real estate, is the exclusive property of the widow, to dispose of as she pleases, without regard to the generally recognized rights of the family of the first taker, through whom it may have been derived. Strangers to his blood and family come into the enjoyment of an estate, which may have descended from father to son, through a long and unbroken line, in which, it would seem, justice would require it should continue, and to which, at least, it should return on the death of the widow. Surely, greater liberality and a more intense regard for the interests of the widow could hardly be manifested.

It is now contended that a proper and just construction of our statutes on this subject, requires that infant wards shall be deprived of their slender patrimony to advance the widow—that their interests must be sacrificed to hers—that this bounty of the legislature is a preferred debt, overriding all claims whatsoever, and if there be no personal property to satisfy it, the inheritance must go for such purpose.

Section 115 of Ch. 109, (Scates' Comp. 1206,) provides that all demands against the estate of any testator or intestate shall be divided into classes. In class first are arranged all funeral and other expenses attending the last sickness of the deceased. Into the second, all expenses of proving the will and taking out letters testamentary of administration and settlement of the estate, and the physicians' bill in the last illness of the deceased. Into the third, trust moneys; and into the fourth, "all other debts and demands of whatsoever kind, without regard to quality or dignity, which shall be exhibited within two years from the grant of letters of administration."

The claim of the appellees in this case is of the third class, and the only claim of that description existing against the estate. Such a claim was once considered of the most sacred character, the unlawful appropriation of which was visited, not only by the severest censure, but by deserved punishment. Our law, however, it is contended, ignores this doctrine, and appropriates such funds to the widow of the guardian who may have been faithless to his trust, and whose property it never was.

We do not think our legislation should receive this construction, producing, as it does, such results, seemingly so full of injustice.

On intestacy, the personal property belonging to the intestate is vested in the administrator, to be disposed of in the payment of debts, to the extent only of the residuum, after the widow shall have made her selection. The lands descend to the kin, chargeable with the debts. The first duty of an administrator is, to make a careful and true inventory of the personal prop-

erty, and when that is made, by section 49, (Scates' Comp. 1201,) the widow may thereupon relinquish her right to any or all of the specific articles of property allowed to her; and in case the intestate shall not leave any or all of the articles specified, she may take other property, or the value of the specific articles in money, and it is made the duty of the administrator, or court of probate, to allow her the value of the articles in money, or in other personal property, at her election.

When the widow has made her election, then, and not before, the balance of the personal property becomes vested in the administrator, and is assets for the payment of debts.

By section 88, (ib. 1201,) when the estate is solvent and free from debt or incumbrance, or where there is a sufficiency of money or assets in the hands of the administrator to pay the debts independent of the property mentioned in the inventory and bill of appraisement, the widow can then make her election whether she will exercise her dower right, if there be children, to one-third of the personal property out of the articles mentioned in the bill of appraisement, according to the appraised value thereof, or the amount thereof in money, whenever the property shall be sold and the money therefor collected; or, she may take a part in property and a part in money, as she may prefer; or, " otherwise," if there be no children, she takes the whole, as heir, by section 46, (ib. 1200.) In all cases the administrator is required to notify the widow so soon as the appraisement is made, and to set apart to her the articles to which she is entitled, " and as she may prefer and select," within thirty days after the widow shall make written application for that purpose, with a penalty against the administrator for neglect. (Ib. 1201.)

From these various statutes we would understand, when the personal estate of an intestate is not sufficient to pay the debts, giving to that term its most comprehensive significance, and is only sufficient to satisfy the claim of the widow, she can take the whole of it either in property or money, if it be money, or when reduced to money by sale, to the exclusion of all others, no matter in what class the debts or claims may fall. If this be so, and there be debts coming within the several classes specified in section 115, (ib. 1206,) they are to be postponed, or if there be real estate, they would form the basis of petition for its sale to pay them. Ib. 1209, secs. 3, 4. The widow cannot be postponed so far as the personal property is concerned, or the money, and the personal property or money, under such circumstances, cannot be considered as assets for the payment of debts. The law vests these articles, or the money, at her election, in the widow, if they are on hand at the death of the

intestate. Her election is confined to the personal property or the money arising from its sale, or that may be on hand. If she waives the right to take the property, and there is no money on hand representing its appraised value, the property must then be converted into money and paid to her to the extent of her claim, and the overplus applied to the payment of debts. If her whole claim is not satisfied by the sale of the personal property, the balance becomes a debt against the estate, and she a creditor on the footing of other creditors. By waiving or refusing to exercise her right to retain the property on hand as hers exclusively, and demanding money, she must be considered as consenting to become a creditor, preferred only to the extent of the avails of the sale of the personal property.

If the widow refuses to take the property, demanding money, placing herself by her own choice in the attitude of a creditor, who can only be paid with money, then it follows she must take all the hazards incident to such a position, and if the personal property will not fetch the money to which she is entitled, and the real estate has to be sold to pay the debts, then the assets derived from such sale are applicable to her debt, as it is applicable to all other debts, according to the class in which it may be found—she has no longer a preference.

Abundant time is given the widow to determine what she will do—whether she will take the specific property, or make her claim a money demand—whether she shall occupy the position of a recipient of the bounty of the law, or a creditor demanding money. She must be controlled by her own election. As in the case of a will, time is given her to take under it or renounce, and having decided to take under the will, she is forever barred and precluded from claiming under the law, and *vice versa*.

We think this view keeps pace with the liberal disposition evinced by the legislature toward widows, by conceding her claim to be a creditor, her claim on the personal property being unsatisfied, and to pay which, the heir can be deprived of a portion if not the whole of his inheritance. A more rigid construction of the statute would perhaps deprive the widow of this position, and would leave her to the exclusive enjoyment only of the personal property or money on hand, at the time of the death of the intestate husband, for the statute nowhere declares, in terms, she shall have any right to the money which shall be realized from the sale of the real estate of the intestate, that being assets for the payment of debts only, as other assets. The right of the widow seems to be confined to the property or money on hand. But the statute having been understood to have received a different construction by the courts of this State, in which there has been general acquiescence, we will not disturb

it.  We think she is a creditor of the estate to the extent of this bounty, and exclusive, so far as the personal property is concerned, and that to pay any balance of the debt thus raised the land can be sold.  To the assets thus derived she has not the exclusive right to any part of them, if there be other claims, and if there be, they are to be paid according to the class into which they are arranged.

If there be no other debt against the estate than this of the widow, she would, of course, have the right to have appropriated to its payment so much of the assets derived from such sale as would be necessary for that purpose, the overplus going to the distributees, as in other cases.

Having renounced her right to the specific property, and having elected to become a creditor, she has no exclusive right or preference to the assets derived from the sale of the land. She is a creditor merely, and as such must take her chances with the other creditors.

In this case, where the money claimed by the appellees never was, in truth, the money of the intestate, the widow cannot be said to have any equitable claim whatever to it.  It was not her deceased husband's—it belonged to these children, and the injustice of taking it from them would be enormous.

The difficulty in reconciling the various provisions of the several statutes we have cited, is not inconsiderable, as they fail to constitute an entirely harmonious system.  We think the view we have taken of them tends not only to advance the supposed object of the legislature, but to satisfy the demands of justice, and to produce the desired harmony.

On the facts agreed, we are of opinion that the proceeds of the sale of the land should be paid over to the appellees, their claim being in the third class, as directed by the Circuit Court, and we affirm the judgment of that court.

*Judgment affirmed.*